**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Warren James SHARP, Defendant–Appellant.**

**No. 88–5122.**

United States Court of Appeals, Ninth Circuit.

Submitted March 27, 1990.*

Submission Deferred April 5, 1990.

Resubmitted Aug. 13, 1990.

Decided Aug. 5, 1991.

---

\* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

**813**

and limit restitution in a wire fraud scheme to the amount specified in the count to which the guilty plea was made.

Robert L. Allen, Los Angeles, Cal., Warren James Sharp, Boron, Cal., for the defendant-appellant.

Brenda K. Sannes, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before GOODWIN, SNEED and FERGUSON, Circuit Judges.

FERGUSON, Circuit Judge:

Defendant Sharp appeals the district court's sentencing and restitution order after entering a plea of *nolo contendere.* Sharp appeals on four grounds, asserting that: (1) the restitution order illegally exceeded the amounts contained in the counts pled, (2) the district court erred in accepting the guilty plea because Sharp did not understand the nature of the charges against him, (3) the district court breached the plea agreement between Sharp and the government by sentencing him to fifteen years in prison rather than the ten years recommended by the government and the government breached the plea agreement by not informing the court that petitioner was less culpable than other codefendants, and (4) the district judge was less than impartial, thus entitling Sharp to resentencing by a different judge.

This case primarily presents the issue of whether restitution may be ordered for the loss suffered by all the victims of a wire fraud scheme when the court accepts a guilty plea to only one count of the scheme. In *Hughey v. U.S.,* — U.S. —, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), the Supreme Court limited restitution under the Victim and Witness Protection Act (VWPA) to the offense of conviction. Although we previously held that a single count of wire fraud encompasses liability for the entire scheme, see *U.S. v. Pomazi,* 851 F.2d 244 (9th Cir. 1988), we read *Hughey* to overrule *Pomazi*

## FACTS

The government indicted Sharp and five other codefendants on multiple counts alleging a wire fraud scam which grossed over $8.5 million. Sharp pled *nolo contendere* to one count (Count 39) of wire fraud and one count (Count 63) of conspiracy to defraud the United States for failure to pay federal taxes.

The first superseding indictment alleged a scheme to defraud and the general means used to carry out the scheme. It then set forth in 62 separate counts specific acts of wire communications. The defendant pled guilty to Count 39, which alleged on December 7, 1982 a wire transfer in the sum of $3,000. He also pled guilty to Count 63, which alleged a conspiracy by the defendant and others to defraud the government of federal income taxes. The count alleged specific acts in furtherance of the conspiracy, including the receipt of specific sums of money.

In exchange for Sharp's pleas on these counts the government agreed to dismiss the remaining counts and to recommend a total incarceration of ten years. Sharp's sentence was incarceration for ten years, restitution of $8.5 million, and a special assessment fee of $50. (Order 86–887(A)–JMI). In addition, the defendant pled nolo contendere to a two-count information which had been transferred from the District of Massachusetts.

Petitioner's notice of appeal included only the first sentencing judgment, but he contends he also appealed the second sentencing because the sentencing dates were the same and, at the time of his appeal, one case number referred to both. The government argues this court lacks jurisdiction to hear the appeal on the second indictment since Fed.R.App.P. 3(c) requires that the notice of appeal separately note each order appealed. Although *Kruso v. Int'l Telephone & Telegraph Corp.,* 872 F.2d 1416, 1422 (9th Cir.1989), *cert. denied,* — U.S.

——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990), construed the rule broadly, we cannot find any fact which demonstrates an intent to appeal the judgment of conviction in the second sentencing judgment. Defendant did not even mention the District of Massachusetts information in his opening brief.

## DISCUSSION

### I. RESTITUTION

■ We review a restitution order for abuse of discretion as long as it is within the statutory framework. *Pomazi*, 851 F.2d at 247. However, questions of law are reviewed *de novo*. *U.S. v. McConney*, 728 F.2d 1195 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

■ Since this case was submitted, the Supreme Court in *Hughey* has held that the Victim and Witness Protection Act (VWPA), 18 U.S.C. §§ 3579, 3580, limits the breadth of a restitution award available against convicted defendants. In *Hughey*, the defendant pled guilty to one count of a scheme involving fraudulent use of a credit card, 18 U.S.C. § 1029(a)(2), in exchange for the government's agreement to forgo prosecution on the remaining counts or any other offenses arising from the scheme alleged in the indictment. The government alleged that Hughey's fraudulent scheme of stolen credit cards resulted in a total loss to the various victims of $90,431. Each count described the damage to a different victim. Hughey pled guilty to one count which specified damages of $10,412. *Id.* 110 S.Ct. at 1981. After conviction, the district court ordered Hughey to make restitution for the entire $90,431. The Fifth Circuit affirmed, finding that Congress intended restitution to be ordered liberally.

On appeal, the Supreme Court stated that the language of the VWPA determines the limits on restitution. The Court concluded that under the VWPA, restitution must be confined to the offense of the conviction only.

In *U.S. v. Garcia*, 916 F.2d 566 (9th Cir.1990), we held that *Hughey* required us

to vacate a restitution order where the defendant was ordered to pay restitution on two robbery charges even though he was convicted of only one. We interpreted *Hughey* as holding that the VWPA limits restitution to the loss caused by the specific conduct described by the offense of conviction. *Garcia* at 567.

*Hughey* and *Garcia* instruct us that when reviewing a restitution order we must look to the conduct underlying the offense of conviction. Here, petitioner pled *nolo contendere* to two counts in the 63–count indictment. The restitution order required restitution of $8.5 million for the entire scheme.

Literally, count 39 charges that a $3,000 fraudulent transfer was part of an overall scheme which defrauded various victims of $8.5 million. Petitioner claims he pled only to the conduct underlying the $3,000 wire fraud, but the government argues that he pled to the entire $8.5 million scheme because the entire scheme was incorporated by reference into each count.

Prior to *Hughey*, in *Pomazi* we held that the offense of wire fraud "includes the fraudulent scheme ... and restitution may be ordered in an amount caused by the entire scheme rather than only in the amount caused by a particular mailing." *Pomazi* at 249 (quoting *Phillips v. U.S.*, 679 F.2d 192, 196 (9th Cir.1982)).

Pomazi pled guilty to two counts of mail fraud under 18 U.S.C. § 1341 in an information alleging a "boiler room" scam which grossed over $180,000. The government limited its restitution request to $64,-229 and the district court ordered Pomazi to pay that amount. The counts to which he pled did not specify the loss to the victims. On appeal, we affirmed holding that "when the crime charged involves a scheme to defraud, a sentencing court may order restitution paid to victims of the entire scheme...." *Id.* at 250.

The government urges us to distinguish *Hughey* from *Pomazi* based on the language of the statutes defining the offenses. It argues that *Hughey* does not affect Sharp's restitution order because

one of the elements of wire fraud is the existence of an underlying scheme.[1] We have ruled that an essential element of a wire fraud violation is proof of a scheme to defraud. *Schreiber Distributing v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir.1986).

It is true that both Pomazi's mail fraud and Sharp's wire fraud convictions require the presence of a scheme while Hughey's fraudulent use of unauthorized credit cards does not. But this is too fine a point on which to distinguish *Hughey*, particularly since the indictment in *Hughey* also alleged a scheme. *Hughey* 110 S.Ct. at 1981. We therefore hold that *Hughey* overrules *Pomazi* with regard to restitution under the VWPA. Even when the offense of conviction involves a conspiracy or scheme, restitution must be limited to the loss attributable to the specific conduct underlying the conviction.

■ Alternatively, the government asserts that Sharp should not be allowed to challenge the restitution order because he was informed at the time of his pleas that restitution for the entire scheme may be ordered.[2] However, the VWPA itself, while it seeks "the fullest possible restitution from criminal wrongdoers," seeks that restitution without infringing on the constitutional rights of the defendant. *Hughey* 110 S.Ct. at 1985. The government's efforts to inform Sharp of the breadth of possible restitution does not save the restitution order from the *Hughey* command that restitution orders beyond the offense of conviction are illegal.

■ Finally, we reject the government's argument that the count pled included an admission to the entire scheme because a preamble incorporated by reference allegations of the entire scheme into each count. To permit a greater offense to be incorporated by reference into each count of the indictment destroys the plea bargain process. As the Court stated in *Hughey*, "[t]he essence of a plea agreement is that both the prosecution and the defense make concessions to avoid potential losses." *Id.* 110 S.Ct. at 1985. If the entire scheme is incorporated into each count the government is conceding little when it agrees to dismiss 61 counts in return for a plea which includes the entire "scheme."

"The appropriate remedy for a sentence imposed in excess of the sentencing court's authority is to vacate the entire sentence and remand for resentencing." *United States v. Blue Mountain Bottling Co.*, 929 F.2d 526, 529 (9th Cir.1991) (citing *United States v. Jenkins*, 884 F.2d 433, 441 (9th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 568, 107 L.Ed.2d 562 (1989)). Accordingly, we vacate the district court's sentencing order and remand this case for resentencing.

## II. DISTRICT COURT ERROR IN ACCEPTING PLEA

■ We treat the question of whether a plea was made knowingly as a factual matter to be reviewed under the clearly erroneous standard. *U.S. v. Read*, 778 F.2d 1437, 1440 (9th Cir.1985), *cert. denied*, 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986). While the ultimate question of whether a plea was entered voluntarily is to be re-

---

1. "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire ... any writings...." 18 U.S.C. § 1343.

2. At the plea hearing, defense counsel expressed reluctance for Sharp to enter a guilty plea because of the potential civil liability for the $8 million.

The government sought to clarify that defendant's plea would expose him to a restitution order for the entire scheme:

My understanding is that if the defendant pleads to a count in which the language of the indictment sets a limit, that the court can sentence within that limit. The indictment says $8.5 million. And as long as he pleads to a count as part of that scheme, he can be sentenced to $8.5 million.

The court then asked if the count alleged that amount of money. The government responded: "The indictment alleges—the preamble to the count alleges $8.5 million." He went on to explain the charge was part of a scheme.

viewed *de novo*. *Iaea v. Sunn*, 800 F.2d 861, 864 (9th Cir.1986). *See also Marshall v. Lonberger*, 459 U.S. 422, 431–32, 103 S.Ct. 843, 849–50, 74 L.Ed.2d 646 (1983).

Petitioner contends that the district court erred by accepting his plea of *nolo contendere* because he did not understand the nature of the charges. He argues that the district court judge was required to recite the elements of the offenses. This contention lacks merit.

■ Before accepting a plea of *nolo contendere*, the district court must "inform the defendant of, and determine that the defendant understands ... the nature of the charge to which the plea is offered." Fed.R.Crim.P. 11(c)(1). The nature of the district court's inquiry may vary depending on the particular facts of the situation, the complexity of the charges, the personal characteristics of the defendant, and whether the defendant was represented by counsel. *U.S. v. Kamer*, 781 F.2d 1380, 1384 (9th Cir.), *cert. denied*, 479 U.S. 819, 107 S.Ct. 80, 93 L.Ed.2d 35 (1986). Here, at the district court's request, the prosecutor explained the nature of the charges to Sharp at both plea hearings. The government's explanation went beyond the mere reading of the indictment and, according to Sharp's counsel, the explanation "fairly stated" the charge. We may assume that Sharp, as vice-president of sales at the fraudulent company, did not lack intelligence; he replied affirmatively to the court's question whether he understood the charges at both hearings.

The totality of these circumstances indicate that Sharp understood the nature of the charges against him. Therefore, the district court did not err by accepting his plea of *nolo contendere*.

## III. BREACH OF PLEA AGREEMENT

■ To determine whether a plea agreement was breached, we first determine "what the parties to this plea bargain reasonably understood to be the terms of the agreement." *Read*, 778 F.2d at 1441 (quoting *U.S. v. Arnett*, 628 F.2d 1162, 1164 (9th Cir.1979)). What the parties agreed to is a question of fact determined by objective standards. *Id.* "Accordingly, the district court's findings as to the terms of a plea agreement are reviewed only for clear error." *Id.; U.S. v. Sutton*, 794 F.2d 1415, 1423 (9th Cir.1986).

■ Petitioner contends the district court was bound by the plea agreement he had negotiated with the government and breached that agreement by sentencing him to a total of fifteen years in prison rather than the ten years recommended by the government. However, in a plea agreement, the government may "make a recommendation ... for a particular sentence, with the understanding that such recommendation ... shall not be binding upon the court." Fed.R.Crim.P. 11(e)(1)(B). The district court does not breach the agreement by ordering a sentence in excess of the government's recommendation. *U.S. v. Johnson*, 826 F.2d 913, 914 (9th Cir.1987).

■ Petitioner also asserts that the *prosecution* breached the plea agreement by allowing him to receive a sentence exceeding ten years. The record, however, indicates that the government complied with its commitment by recommending an aggregate sentence of ten years and by moving to dismiss the remaining counts. A defendant receives the benefit of a plea agreement when the government makes its recommendation to the court even if the district court sentences the defendant in excess of that recommendation. *Johnson*, at 914.

Finally, petitioner contends that the government breached the terms of the plea bargain by not reporting to the court that he was less culpable than the other codefendants. However, the oral plea agreement, as restated at the February 1, 1988 hearing, does not contain a promise to make a culpability statement. Neither petitioner nor his counsel disputed the government's description of the plea agreement at the time; therefore, this claim also fails.

## IV. RESENTENCING BY A DIFFERENT JUDGE

■ Sharp argues that if the case is remanded, it should be assigned to a differ-

ent judge for resentencing. Absent unusual circumstances, resentencing is to be done by the original sentencing judge. *U.S. v. Borrero-Isaza*, 887 F.2d 1349 (9th Cir.1989). This record indicates no basis for remanding to a different judge.

AFFIRMED in part; VACATED in part; and REMANDED for resentencing.